## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| Brian Zinn and Lawrence Dolce, Individually, and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>W.C. Bradley Co. and Char-Broil, L.L.C.,<br><br>Defendants. | Civil Action No. 1:15-cv-24671<br><br>**JURY TRIAL DEMANDED** |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

Plaintiffs Brian Zinn and Lawrence Dolce ("Plaintiffs"), make the following allegations based on their personal knowledge and the investigation of their counsel concerning their purchases of Char-Broil gas grills manufactured and sold by or through Defendants W.C. Bradley Co. and Char-Broil, L.L.C.  Specifically, Defendants advertised, marketed, and promoted the Char-Broil gas grills described herein at paragraph 1 (the "Grills"), based upon false, misleading, and deceptive material representations made to consumers concerning the operation of the Grills, including the electronic igniter and ignition system (the "Igniter Module") which is built into each of the Grills, and manufactured and sold the Grills in a faulty unworkable condition, not fit for the purpose for which they were sold, resulting in damage to Plaintiffs and the members of the Class (as defined below) and exposing them to serious physical harm. As

a result of Defendants' representations, Plaintiffs and the Class members purchased Grills manufactured and sold by Defendants based upon the false, misleading, and deceptive claims, thus sustaining actual damages as a result thereof.

## FACTUAL ALLEGATIONS

1.     Plaintiffs bring this action against Defendants W.C. Bradley Co. and Char-Broil, L.L.C., both on their behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a class of other similarly situated persons that purchased a Char-Broil Grill with an Igniter Module during the Class Period (as defined below), including, but not limited to, the following models of Grills manufactured and/or sold by Defendants: Char-Broil Commercial Series, RED, Quantum, Professional Series, Gourmet Series, Stainless Series and Patio Bistro (the "Class").

2.     For years, Defendants have failed to disclose the problems with the faulty Igniter Modules installed in the Grills, as well as the safety hazard of lighting the Grills using the alternative method promoted by Char-Broil in its product manual instructions, to Class members and the public. As a result, Plaintiffs and thousands of consumers across the country have purchased one or more Grills without knowing that they will not perform the function for which they are intended and needed.

3.      Defendants engaged in a misleading and deceptive campaign to promote, market, and advertise the Grills as reliable and fit for the purpose for which they were purchased.

4.     Plaintiffs and Class members purchased Grills manufactured by the Defendants that were misleading and deceptively promoted and/or advertised. As a result,

Plaintiffs and the Class members have conferred a benefit upon Defendants which Plaintiffs and the Class would not have conferred had they known the truth about the Grills. Plaintiffs have been forced to pay for the Grills and defective parts directly from the Defendants.  Accordingly, Plaintiffs bring this action for damages and equitable and injunctive relief against the Defendants.

## PARTIES

5.     At all relevant times, Plaintiff, Brian Zinn, resided and continues to reside in the State of Florida.  Plaintiff purchased one of the Defendants' Grills, specifically a Gourmet 4 Burner Gas Grill, Model #463251914, in 2013, for over $450.00, expecting the Igniter Module to work and after consideration of Defendants' representations concerning the reliability of the Grill, including the Igniter Module. Defendants' unlawful conduct, including their deceptive statements in their labeling, marketing, advertising, and promotion of the Grills, as alleged in greater detail herein, induced and caused actual damages to Plaintiff and each Class member in that they paid substantially more for the deceptively advertised Grills they purchased than they would have paid for competing products or would not have purchased the Grills at all. Defendants' deceptive labeling and advertising acts and practices caused Plaintiff to purchase a Grill, and suffer injury in fact and actual damages.

6.     At all relevant times, Plaintiff, Lawrence Dolce, resided and continues to reside in this District, in the State of Florida.  Plaintiff Dolce purchased one of the Defendants' Grills, specifically the Patio Bistro 240, for over $150.00, expecting the Igniter Module and unit to work and after consideration of Defendants' representations

3

concerning the reliability of the Grill, including the Igniter Module. Defendants' unlawful conduct, including their deceptive statements in their labeling, marketing, advertising, and promotion of the Grills, as alleged in greater detail herein, induced and caused actual damages to Plaintiff Dolce and each Class member in that they paid substantially more for the deceptively advertised Grills they purchased than they would have paid for competing products or would not have purchased the Grills at all. Defendants' deceptive labeling and advertising acts and practices caused Plaintiff Dolce to purchase a Grill, and suffer injury in fact and actual damages.

7.    Defendant W.C. Bradley Co. ("WC Bradley") is a Georgia corporation which transacts business in the State of Florida and sells its Char-Broil Grills in this District.  The deceptive advertising referenced and alleged herein by WC Bradley and Char-Broil occurred throughout the Class Period for the Grills described above.  WC Bradley, at all times material hereto, manufactured and was responsible for the Grills' labeling, marketing, advertising, and promotional materials. Based upon information and belief, at all times relevant hereto, WC Bradley was and is doing business within the State of Florida either directly or indirectly through the sales of its products in this District in retail locations.  WC Bradley, through Char-Broil, distributes and sells its Grills at many stores throughout the State of Florida and in this District, including Home Depot, WalMart, Lowe's, Ace Hardware, Sears, Target, True Value, as well as online from Amazon.com and also sells parts directly to consumers in the State of Florida.

8.    Defendant Char-Broil, L.L.C. ("Char-Broil") is a Georgia limited liability company, based in Columbus, Georgia.  WC Bradley owns 100% of co-defendant Char-

4

Broil, and is responsible for the conduct of, and controls the actions of, Char-Broil.  At all times relevant hereto, Char-Broil was and is doing business within this District and in the State of Florida and directly markets and sells the Grills and parts with WC Bradley in this District in retail locations such as Home Depot, WalMart, Lowe's, Ace Hardware, Sears, Target, True Value, as well as online from Amazon.com, and sells parts directly to Florida residents through its website.

9.      Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each Defendant was acting as an agent of the other Defendant, and at all times mentioned was acting within the course and scope of said agency with the full knowledge, permission, and consent of the other Defendant.  Further, at all relevant times herein mentioned, the employees of Char-Broil and its subsidiaries, affiliates and other related entities, were the agents, servants and employees of WC Bradley, and at all times relevant herein mentioned, each was acting within the purpose and scope of said agency and employment.  Whenever reference in this Complaint is made to any act or transaction of Defendants, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendants while actively engaged in the scope of their duties.

10.     At all material times throughout the Class Period the Defendants caused their Char-Broil Grills to be manufactured not in the United States, but exclusively in China.

5

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over this action, pursuant to 28 U.S.C.

§ 1331(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum

or value of $5,000,000, and is a class action in which the Plaintiffs and members of the

Plaintiffs Class are citizens of states different than Defendants.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that many of

the acts and transactions giving rise to this action occurred in this District and because

each of the Defendants:

      a.     solicit and transact business in this District and have intentionally

availed themselves of the laws and markets within this District through the

promotion, marketing, distribution, and sale of their products in this District;

      b.     do substantial business in this District; and

      c.     are subject to personal jurisdiction in this District.

      d.     Plaintiff Dolce resides in this District; and

      e.     the acts giving rise to the claims herein occurred in this District.

## ADDITIONAL FACTUAL ALLEGATIONS

13.     Throughout the Class Period, Defendants have engaged in uniform and

standardized labeling, marketing, advertising, and promotion of the Grills to consumers.

Defendants' promotion of the Grills emphasizes that they are "built to perform".  As to

the Igniter Module, Char-Broil representations include the following: "Surefire Ignition

system syncs at every burner for one-punch reliable start-ups", "Electronic ignition

6

delivers fast, reliable starts", and "Easy electronic ignition makes lighting the grill a snap."  Thus, throughout their numerous marketing campaigns and promotional efforts, Defendants have falsely touted the Grills as being "built to perform" and the ignition systems and modules as "reliable" and "easy" in written advertisements, thereby deceptively misrepresenting the reliability of the Defendants' Grills, and including the Igniter Modules, including the Grill purchased by Plaintiffs.

14.     Moreover, even without these representations, Plaintiffs and the Class were entitled to expect and receive a product that was fit for the purpose it was purchased by Plaintiffs and the Class and sold by Defendants.  Defendants have induced Plaintiffs and Class members to purchase the Grills based on their deceptive conduct, as set forth in detail herein.

15.     Plaintiffs, individually and as the proposed class representative of the Class defined in herein, seeks to redress Defendants' deceptive practices in the labeling, advertising, marketing, and promotion of their Grills, as well as the design and manufacture of the Grills, including, the Igniter Modules.

16.     Defendants have failed to fully and adequately inform consumers of the financial costs and safety issues associated with owning a Char-Broil Grill as a result of the probable unexpected and defects repairs that exist. Defendants are well aware that the faulty Igniter Modules have not been properly addressed by its actions to date.  Even if Defendants ignored the information provided in this Complaint, along with the information it has on the subject to which Plaintiffs are not privy, simply spending a few

minutes on the Consumer Reviews website would provide Defendants with some much-needed perspective on the matter:

> "The igniter button on my Char-Broil Grill never worked even though it was professionally installed. I always have to manually light it which is a pain. Now it won't light manually. It is only 2 years old and barely used but I am ditching it and staying away from this company."

> "Bought at Home Depot, they should stop selling this product. I had a part that failed - an electronic igniter. The part was 22.00 dollars at Char-Broil website. I put in an order and they came back with a shipping charge of 23.00 dollars for a part the size of a golf ball. Then tried to upsell me on other products. When I declined they said they would set up a case number and call me back. Of course they never did. I called Home Depot and they said "Sorry we cannot help you." Home Depot guy at first was rude and no help. I called Home Depot home office and gave them the info including the guy at Home Depot. Within ten minutes I got a call from home depot. They are getting me the part. But please warn anyone you can - Char-broil is a Rip off Company, do not buy."

> "I purchased a Char-Broil 3-burner infrared gas grill in Nov. 2011. The electronic igniter failed in August 2012 during its first season of use. I was informed that the failure occurred after the 1-year warranty period. So I purchased a new one at a (very high) cost of around $40.00. In less than one year, the igniter failed again. The "customer service" rep. (what a misnomer) told me replacement parts have no warranty whatsoever and that I would have to purchase a new one. I told him I had no desire to continually purchase this replacement part every year or so and that it was a perverse incentive for them to correct the obvious design problem when they benefit from selling more replacement parts. I should have checked customer complaints before purchasing the grill initially. I would recommend that no one purchase a Char-Broil gas grill based on my "customer service" experience, the frequent igniter failures and the general performance of the grill."

Even Char-Broil's own website, in the reviews section, highlights the Igniter Modules problems:

> "This will be my third ignition switch within the last 12 months. The original and the replacements have all fallen apart very quickly. It's just poorly made plastic and doesn't hold up to even casual use. It's spoiling what otherwise seemed like a good grill. It's not expensive to replace, but

the shipping costs, handling time, and time to install the replacement all add up to a major headache."

"This is the second time I have had to replace the ignition switch. I don't think it's well made and I am tired of having to pay for the part and for shipping. I have also had to replace the in hood thermostat. In addition, there are no retailers that carry parts and waiting a week to ten days for delivery prevents me from using the grill."

17.    In 2013, Plaintiff Dolce purchased a Char-Broil Gas Patio Bistro Model 240 Full Size Grill.

18.    Subsequently, Plaintiff Dolce received a notification from Char-Broil concerning a recall of his Grill. The recall affected over sixty thousand (60,000) purchasers of this Char-Broil Grill. Char-Broil's recall was both inadequate and unconscionable and consisted of merely sending parts to Mr. Dolce and all other class members with instructions that they repair the defective Grill themselves.

19.    Char-Broil sent uniform written communications to Mr. Dolce and class members instructing Mr. Dolce and class members to individually, without any assistance from Char-Broil: (a) remove the LP cylinder and grease the same; (b) remove the battery cap and battery; (c) remove the Electronic Ignition Module wiring and pull all wiring from the Electronic Ignition Module; (d) remove electrode wire from the electrode; (e) discard the wire; (f) remove the Electronic Ignition Module and discard; (g) install the new Electronic Ignition Module bracket; (h) install the new Electronic Ignition Module; (i) install new electrode wire to the Electronic Ignition Module; (j) re-route the electrode wire; (k) install electrode wire to the electrode; (l) install new ground wire to the

Electronic Ignition Module; (m) install ground wire to the front left leg stud; (n) reinstall the battery; (o) cut old ignition wires at the switch; and (p) reinstall the LP cylinder.

20.     Plaintiff Dolce, followed the instructions of Char-Broil and performed all repairs which Char-Broil endorsed.

21.     However, in October of 2015, Mr. Dolce used the Grill and then turned everything off. Subsequently, he heard a loud boom and witnessed the Grill exploding. Mr. Dolce immediately called the Delray Fire Department who rushed to the scene and hosed the Grill. Mr. Dolce contacted Char-Broil and reported the serious incident. Char-Broil merely reported that it would send out replacement parts by mail. Mr. Dolce was outraged, but Char-Broil went ahead and sent an Ignitor Module in the mail.

22.     Upon his reviewing the module, Mr. Dolce observed that it was actually the same Ignitor Module that had been recalled. Mr. Dolce again contacted Char-Broil and explained to them that he was sent the Ignitor Module that Char-Broil had previously recalled. Char-Broil unconscionably stated that they would only send an updated module to be installed by Mr. Dolce. The remedy offered by Char-Broil was inadequate, unsafe and failed of its essential purpose.

23.     For obvious reasons, Mr. Dolce did not feel safe using the Grill with yet further replacement parts. Char-Broil's conduct was unconscionable, exposed Mr. Dolce to further potential of serious injury and Char-Broil's conduct is inadequate and unconscionable.

24.     Further, as set forth herein, Char-Broil acknowledges the likelihood of the failure of the Igniter Modules. Incredibly, Char-Broil gas grills come with a built-in

match holder that hangs on a chain under its Grills. Additionally, Char-Broil's website provides a tricks for consumers section titled, "How to Light Your Gas Grill Manually," which provides instructions for utilizing the match holder that comes built-in on the Grill. Char-Broil instructs consumers to, "First, find the lighting hole on the side of the grill. Once you see that, place a match in the curled end of the holder and then light that match with another one. Turn on gas to the burner closest to the hole and insert the match to light. After the first burner is lit, turn on adjacent burners to cross-light them. Once all the burners you want on are lit, the operation of the grill is the same."

25.    After receipt of many reports of dangerous and hazardous events, Char-Broil was forced to engage in a recall. Char-Broil engaged in a wholly inadequate partial recall of over sixty thousand (60,000) gas grills due to the major safety issue posed by the occurrence and possibility of the electronic ignition on the grill and module igniting unexpectedly, and posing a serious burn hazard. Char-Broil admitted that it had received reported events of consumers' clothing catching on fire, burns and singed hair. Notwithstanding that its products endangered the health and safety of Plaintiffs and Class members, the Defendants merely sent a replacement kit consisting of wiring, a replacement module and igniter.

26.    Class members throughout the United State are complaining of the severe hazards relating to Char-Broil Grills, including but not limited to the following:

"I bought a Char-broil Model # 473720108 1 year ago last fall as a gift for my sister. It was used for one full summer and was kept outside during those summer months, but was ALWAYS covered when not in use. It was kept in the garage and covered over the winters. Went to use it on the second summer of ownership and flames shot out of the holes where the control knobs were located, melting the

11

knobs onto the knob stems. Turned off the grill and found that the heat shield was completely rusted out, thus causing the flames to reach the control knobs. This heat shield rusted out after only 1 summer of use in a grill that was ALWAYS kept covered!! Called Char-broil and they basically said "Too Bad". After the fact they told me that the cover should be taken off the grill "daily" to allow the grill to air dry in order to prevent the heat shield from rusting. I never heard such nonsense and will not be buying a Char-broil again. (John M. – 6/2/2011)"

"I bought a Char-broil single burner grill at Tyndall AFB in January.  I have used it three times and suddenly the grill has started flaming up when I start to cook on it.  I have checked the connections and it looks like the fire is coming from behind the control knobs and all along the copper looking tubing.  I refuse to attempt another lighting of this grill.  It is very unsafe and not worth blowing myself up.  Tyndall AFB has told me to contact Char Broil since they cannot refund my money.  Easier said than done, huh? (Charles Jones – 3/25/2012)"

"We lit our charbroil we have had for about 3 years with no problems, two nights ago we lit it like always and the knobs both blew off, one of which hit my daughter in the face. I'm getting the run around from these people and unsure if a lawsuit is the way to go. My 11 year old may have a permanent scar on her cheek. All the hoses busted, and melted. I will never deal with these people again (4/4/2013)"

"Bought grill last summer. Used it about 2 times. Used it for the first time this spring. Flames flew out one of the knobs and melted it. I guess it won't do any good to report it.  Maybe BBB would get more done. (Dolores Ganter – 5/27/2013)"

"After using this grill for 3 months and cleaning it with the clean cycle after each use it caught on fire while cooking 4 hamburgers on a three burner grill. The grease pools on the tray underneath the grates and catches on fire. I started cleaning the grill manually after each use and still caught on fire while cooking sirloin steaks (2) small ones. I contacted Charbroil without any resolution. I sent pictures of the damage. The grill is the worst grill I've ever owned and it's dangerous. I guess I am going to put it on the street since Charbroil customer service isn't concerned. DO NOT PURCHASE THIS PRODUCT... (Linda, Chesapeake, VA – 9/1/2015)."

"Not even 1 1/2 year old from Lowe's. 1st year regulator leaked. Char-Broil sent new one w burners & Control Assy. 3 months later regulator leaking again. Bought new at Lowe's (Char-Broil brand). Had to replace 3 more times. Blew up in my face last use. Contact Char-Broil again. Just told them I wanted a new safe

grill. Stated that the Commercial infrared series is supposed to be the best. They stated they can give me a 15% discount towards a new one. What an insult. Now contacting a lawyer. Could have just satisfied with a replacement but gonna cost me more that now. Purchasing a Weber grill that was going to first place but Lowe's (grill expert) talked me into this. Commercial series would give years of service. 1 1/2 year use? Beware of Char-Broil junk series lol. (Kevin of Charleston, WV on Aug. 6, 2015)"

"FIRE HAZARD!!!!! Very first time we used the Char-broil 463436514 grill it caught fire at the regulator connection. Heard hissing then massive flames shot out the back of the grill. We are so lucky the propane tank and spare tank did not explode and that no one was hurt and that our property was not damaged other than the grill. (Ed of Guymon, OK – 7/1/2015)"

"Well tonight we TRIED to have a BBQ. Our ONE year old "Char-Broil" deluxe "Infrared" version BBQ BLEW UP! I was not injured, the fireball was close but didn't singe me. This piece of junk has had a problem with the burners blowing out even in a light breeze. Seems what happened was burner #1 and #2 were on low. Burner #3 was on high. Burner 1 & 2 blew out and 3 continued on. The case loaded up on propane and we didn't know it. Finally #3 set off the collection of gas and BOOM! The left and right grids stayed in place, but the middle one went flying. I have had it catch fire behind the knob in the area of the "Venturi". I was lucky as I heard it (makes a WOOSH/Whistle) and shut it off quickly. Others have had the knob melt off or catch fire. I took LOTS of pictures. One call to "Char-Broil" yielded me plenty of scripted answers, that they would replace any parts under warranty. This thing is a cheap piece of junk made in China. I have already sent in the requested pictures of the firebox, the burners, and the cooking grates. I got a ton of polite "I'm terribly sorry" from her, but no solid answer as to what Char-Broil is going to do to make this right. I want Char-Broil to REFUND ME THE COST OF THIS GARBAGE. I will show this to Walmart and send their corporate office the pictures of this thing too. I purchased it there. Char-Broil needs to stop selling this model. This thing is poorly designed and someone will get injured by it. It is now parked where it belongs... by the curb waiting for the trash man. (Kirk of Las Vegas, NV on June 14, 2015)"

"Bought the first grill in 2013 and internal gas line ignited, blew off the knob and a trajectory of flames shot out. Char-Broil sent me replacement parts for the parts that were destroyed in the fire. I contacted my store Meijer where I purchased the grill and they replaced the grill with the same model grill. This year, again at a family cookout, another trajectory of flames shot and repeated the exact same incident. Char-Broil does not consider this a problem and again, only offered to replace the burnt parts. If it only a matter of time before the trajectory of flames hits a human being. Very dangerous situation. This is a warning and alert to be

13

careful if you decide to purchase this grill. (Caroline of Grove City, OH on June 3, 2015)"

"Bought the grill and have used it maybe a dozen times. The grill is just like brand new. Turned it on and it started smoking. I went to turn the knob off and it came off right in my hand...melted right off. Now I am petrified and trying turn off the lip tank, shaking like a leaf. I thought the tank was going to explode. The worst grill I have ever owned. Going back to a Weber Kettle. (Kimberly of New London, CT on May 8, 2015)"

"I used my grill about 10 times before one of the burners failed and flames started shooting out the front of the grill and the knob melted off and fell to the ground. I ended up replacing that burner\knob with new parts and that worked for about 10 more uses of the grill before the same thing happened again on a different burner! Needless to say, I pushed the whole thing out to the curb for recycling to pick up, and then went to the store and bought a Weber - should have done that the first time and saved myself $500. Worst made thing I have ever owned that cost so much. Don't buy anything from this company! (Marc of Eden Prairie, MN on July 4, 2014)"

"Char Broil Model #463722712 - I purchased this grill from Walmart in 2013 and this was my 2nd time using it. The grill was clean and had been kept covered during un-use. Fired it up and went in to get my meat, and when I returned, the grill was on FIRE! Flames were pouring out the front and I couldn't even turn it off because the knobs had melted and disintegrated. The ignition knob had melted along with the wires connecting the side burner. I had to dump water on it in order to get the fire down enough to shut it down at the propane tank. So glad I had moved it away from my house because the adjoining tank could have exploded. Grill is now completely unusable. I burned my hand and fingers trying to turn off the propane going to the grill. (Christine of Twin Lakes, WI on July 1, 2014)"

"This is the second grill that the knobs caught on fire. The first was straight out of the box. The second grill caught on fire 1.5 years after having it. Char-Broil just told me to clean the burners that it was probably due to cobwebs that caused a flashback fire, which is a shift in gas direction. Sounds like ** to me. I've had other brands of gas grills for many years and never had a problem. Char-Broil Grills in my experience is a piece of junk. Don't think I'll be buying another one. 2 fires is enough for me. Product safety and development is definitely needed. (Andy of Cincinnati, OH on Sept. 16, 2012)"

"We bought a new Char Broil TRU-Infrared 4 burner gas grill in June from Lowe's. The fourth or fifth time we used it on July 30th. I fired up all four burners to heat the grill. I went inside for about 15 minutes and when I returned, there was

a loud humming noise coming from the grill. I turned off three burners and the sound went away. I thought the valve on the bottle wasn't opened enough. I knelt down opened the cabinet, reached in to turn the valve and smelled gas. A fireball erupted blowing out at me. I suffered first and second degree burns on my hands, knee and face. My wife took me to the emergency room. They rushed me in and shot me up with morphine, cleaned and dressed my wounds. I thought we may not have tightened the regulator enough. Last Sunday, we pulled off the regulator and re-attached it. Opened the valve and didn't smell gas so we fired up the burners and everything was ok so we grilled steaks. Last night, we fired up the grill again and right away the loud humming started. We shut off the burners and cooked in the house. I found this site today and saw similar complaints. I will contact Lowe's about returning it ASAP. (Jim of Bakersfield, CA on Aug. 10, 2012)"

"I purchased a Char-Broil grill (model 463243911) almost 1 year ago. The grill caught fire while heating the grill up to cook chicken wings. I smelled propane and as soon as I opened the door to where the propane bottle is hooked up, the fire erupted. The fire appears to have started at the pressure regulating valve and spread over to the bottle connection; the underside of the grill sustained moderate heat damage that is sure to rust very soon. I was able to knock down the flames and stick my hand in there to turn off the propane bottle. I called customer service and after several pictures sent via email, their response was that it was caused by a grease fire. I'm a volunteer firefighter and have never seen a grease fire start under the grill at a connection point that was away from the "grease catch". Another simple fact is that, if they even know their product at all, they would know that the infrared heat model that I have, has very little grease as the design of the grill is/was to burn the grease and droppings instantly as spelled out in the owner's manual. Nevertheless, they say it's my fault and they aren't willing to do a damn thing. I would love to have a class action lawsuit against them! (Richard of Manchester, MD on July 24, 2012)"

"I purchased a Char-Broil Grill Model 463441312 and used it 5 or 6 times and it is less than one month old. I was warming it up to grill some halibut fillet and I went inside to put special seasoning on the fillet and heard a roar like a jet and looked out the window and saw flames shooting everywhere and the back side of my garage was on fire. I ran out the back door and everything was engulfed in flames and grabbed the garden hose and started spraying the siding on the back side of the garage behind the grill location and began to come down towards the flaming grill. All of a sudden, the flames just stopped and I attacked the grill and sprayed down by the tank to cool things down and immediately shut off the supply tank valve. It melted my siding and burned through it from ground level to eave of garage and caused considerable damage to the back wall of the garage. Knobs were all melted off and on the ground. What would have happened if I would not have looked out

15

at that exact moment? It appears a major hotspot was behind the 3rd and 4th burner valves (Jim of Kemmerer, WY on July 13, 2012)."

27.     Plaintiff Zinn purchased his Gourmet 4 Burner Gas Grill in 2013.  The Igniter Module broke and failed to work after a short time. Since that time, Plaintiffs has had to replace his Igniter Module four more times in a two year period.  Each time, Plaintiffs had to purchase, and/or at least pay the shipping for, a replacement Igniter Module, and be without the use of his Grill until he either purchased and received a replacement Igniter Module or contacted Char-Broil customer service and argued with them to get a replacement part and paid for the part and shipping. Most recently, in 2015 he purchased another defective igniter system replacement part from the Defendant and it again failed to work. Moreover, if Plaintiffs needed or wanted to use his Grill, he had to use an alternative means of lighting it, and has suffered exposure of himself and others nearby to the burning flames emanating from the grill. Incredibly, Char-Broil actually defectively designs its Grills to provide for an alternative lighting method and includes in its product manual instructions for how to light a Grill if the Igniter Module fails or breaks, anticipating that the Igniter Modules will fail, and promoting a dangerous alternative rather than warning against it. Specifically, the manual instructs the consumer that if the electronic lighting mechanism does not work, the consumer can attach a match to a clip which hangs on the end of a chain, light the match and then insert the match through a hole in the side of the Grill. However, if the Grill does not light on the first attempt, using this method causes a large burst of flames.

16

28.     Thus, after paying a substantial amount of money for one of the Grills of approximately $500.00 (many of the Grills cost as much as $500), the consumer is forced to purchase a new Igniter Module after only a few number of uses, and often has to replace the Igniter Modules more than once, paying for the replacement part each time, plus shipping and handling. Char-Broil may agree to replace the Igniter Module at no cost for the part, but only after one or more calls, and not before the consumer becomes irate. Even in that case, the consumer must pay shipping and handling.

29.     Moreover, as part of the wholly inadequate partial recall and otherwise, once the replacement Igniter Module arrives, it is extremely difficult to replace and dangerous.  Char-Broil required Plaintiffs and Class members to personally and partially disassemble the Grill, remove the faulty Igniter Module and reconnect the new Igniter Module. Further, once an Igniter Module fails and until a replacement is received, the consumer needs to use the dangerous match-in-the-hole alternative.   In addition, Plaintiffs and Class members need to go through the same process to light each of the other burners, and are thereby exposed to serious personal injury.

30.     In fact, the Plaintiffs and Class members are required to, among other things, disassemble and remove the grill doors, remove the pins, remove the propane cylinder heat shield, remove the entire front support bracket, remove the wiring from the module, re-install the new part, re-attach the wiring, replace the front grill support, replace the propane cylinder heat shield, secure it and re-attach the grill doors.

31.     Plaintiffs and the Class have been injured by Defendants' intentional concealment and non-disclosure of the defective Igniter Modules because they purchased

17

Grills of a quality different than they were promised, and/or paid repair and replacement costs for the Grills that they would not otherwise have paid.

32.     Consumers reasonably rely on the information and representations contained and featured in manufacturers' websites, brochures, and advertisements, to assist them in making informed decisions about which gas grill to purchase.

33.     For the foregoing reasons, Plaintiffs purchased a Grill manufactured and sold by Defendants.

34.     As a result of their conduct and marketing, Defendants have sold thousands of Grills to Plaintiffs and Class members that were falsely advertised and promoted.

35.     Plaintiffs purchased a Grill based on his reasonable expectations that such Grill would operate in the manner and for the purpose for which it was sold, and consistent with the representations by the Defendants regarding the reliability of the Grill and has been harmed as a result thereof.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring this action on behalf of themselves and the proposed Class under Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.  The proposed Class consists of:

> (i)     A class of all individuals or companies who purchased Defendants' Grills in the United States within the applicable statute of limitations preceding the filing of this action (the "Class Period") (the "Nationwide Class"); and

> (ii)    A class of all individuals or companies who purchased Defendants' Grills in the State of Florida during the Class Period (the "Florida Subclass").

The Nationwide Class and Florida Subclass, unless otherwise specifically identified, are referred to herein as the "Class".  Excluded from the Class are Defendants and any entity in which Defendants have a controlling interest, and officers or directors of Defendants.

37.     Based upon the annual sales of Defendants' Grills, which are within the exclusive possession and control of Defendants, the Class comprises many thousands of consumers throughout the United States, including in the State of Florida. There are at least 100 potential Plaintiffss within the Nationwide Class and the Florida Class for purposes of the claims asserted herein under the Magnuson-Moss Warranty Act. The Class is so numerous that joinder of all members of the Class is impracticable.

38.     There are questions of law and fact common to the Class.  Plaintiffs and all Class members were exposed to the same unfair and deceptive conduct, advertising and promotional claims by Defendants.   Plaintiffs and all Class members purchased Defendants' Grills which deceptively portrayed such Grills as reliable and fit for the purpose for which they were manufactured and sold to the Plaintiffs and the Class.  All Class members have seen the exact same or similar advertising, marketing, or promotional materials, in addition to actual written misrepresentations regarding the Defendants' Grills.   In addition, the same deceptive claim that is at the heart of this action was present in all of the labeling, packaging, advertising and promotional materials referenced herein by Defendants.  The common questions in this action include:

a.     Whether the Defendants' Grills were manufactured and sold with a faulty Igniter Module;

b.      Whether the Grills or the faulty Igniter Modules were fit for the purpose for which they were sold and operated as they were advertised;

c.      Whether Defendants' representations regarding the Grills were materially misleading;

d.      Whether Defendants' advertisements, marketing, and/or promotion were false and deceptive in advertising the Grills;

e.      Whether Defendants' conduct violates the laws as set forth in the counts;

f.      Whether Defendants breached express warranties made to Plaintiffs and the Class members;

g.      Whether Plaintiffs and Class members suffered damages by Defendants' conduct and the extent and measure of such injury;

h.      Whether Plaintiffs and members of the Class are entitled to restitution of amounts unjustly and unlawfully retained by Defendants;

i.      Whether Defendants must offer to rescind the purchase prices of all units recalled;

j.      Whether Defendants must disgorge their profits from all units; and

k.      Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

39.     Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiffs has retained counsel competent and experienced in the prosecution of

20

this type of litigation.  The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

40.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impractical or impossible for proposed Class members to prosecute their claims individually.  The trial and the litigation of Plaintiffs's claims are manageable.

41.    Unless a class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiffs and proposed Class members.  Unless a classwide injunction is issued, Defendants will continue to commit the violations of law alleged, and the members of the Class and the general public will continue to be misled.

42.    As set forth in this Complaint, Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.  Plaintiffs and Class members do not have an adequate remedy at law and injunctive relief is necessary to the relief sought and requires no individual determinations.

## COUNT I

### *Breach of Express Warranties*

43.    Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1 - 42 as if fully set forth herein.

44.     Defendants sold, manufactured and distributed the inherently defective Grills.  Such Grills are goods.

45.     Defendants made certain representations, affirmations, promises, and descriptions, all of which became the basis of the bargain between Plaintiffs, Class members, and Defendants. For example, Defendants expressly gave warranties by specific words or actions to Plaintiffs and Class members, both through the issuance of its written warranty accompanying the Grills and/or its advertising campaigns, product packaging and literature and sales professionals used to promote the sale and use of the Grills. Defendants warranted to the general public, including Plaintiffs and Class members, that the Grills were effective, free from material defects in materials and/or workmanship and fit for their intended use. Indeed, the warranty included with the Grills provided that the Grills were "free from defects in material and workmanship under normal use and service" …. Defendants' breach of its express warranty caused Plaintiffs and Class members to suffer injuries, including Plaintiffs' inability to use his Grill, as well as paying for defective products and entering into transactions that Plaintiffs and Class members would not have entered but for Defendants' acts.

46.     The expressed warranties described herein were part of the basis of the bargain for Plaintiffs and each Class member (or was otherwise reasonably relied upon) when purchasing the Grills.

47.     Plaintiffs and each Class member purchased a Grill based upon Defendants' warranties that the Grills were free from defects in material and workmanship.  Had Plaintiffs or any reasonable consumer known about the defects and the numerous

22

problems with the Grills, no consumer would have purchased a Grill or would not have paid the amount they paid.

48.     The Grills did not conform to these express warranties because the Grills suffered from a design and manufacturing defect as discussed above.

49.     Defendants had actual, reasonable and adequate notice of Plaintiffs' and the Class members' claim for breach of warranty and failed to cure. Defendants had actual knowledge of the breach through Plaintiffs' complaints as described above, complaints and service requests they received from Class members, from repairs of the Grills at issue, and from posts included in its own website.

50.     Defendants already had an opportunity to cure the defect in the Grills because it knew of the alleged defects at the time it was selling the Grills.

51.     As a direct and proximate result of Defendants' breach of their warranties, Plaintiffs and Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale because they would not have purchased the Grills, and alternatively for the difference between the value of the Grills as promised and the value of the Grills as delivered. Additionally, Plaintiffs and Class members either have or will incur economic damages at the point of repair in the form of the cost of repair.

52.     Plaintiffs and Class members are entitled to legal and equitable relief, against Defendants, which would strike the unconscionable terms of Defendants' warranties, and are entitled to damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT II

### *Breach of Implied Warranties*

53.     Plaintiff incorporate by reference and reallege the allegations of paragraphs 1 - 45.

54.     Defendants also impliedly warranted to members of the general public, including Plaintiffs and Class members, that the Grills were of merchantable quality, would pass without objection in the trade or business, were free from material defects and reasonably fit for the use for which they were intended by Defendants, namely, for the purpose of lighting and grilling food.

55.     Plaintiffs and Class members based their decision on the skill and judgment of Defendants.

56.     Defendants breached their warranties by: (a) selling Grills that were defective in materials and workmanship and fail during an unreasonably short useful life of such products; and (b) refusing to recall, repair or replace, free of charge, the Grills defective component part.

57.     Plaintiffs and Class members were intended to be the ultimate consumer of the Grills.

58.     Plaintiffs, on behalf of himself and the Class, provided Defendants with notice of their breach of implied warranties. Defendants already were also on notice of the defect from complaints and service requests they received from Class members, from repairs of the Grills at issue, and from its own website.

24

59.     As a direct and proximate result of Defendants' breach of their warranties, Plaintiffs and Class members have suffered damages and continue to suffer damages, including economic damages at the point of sale because they would not have purchased the Grills, or alternatively for the difference between the value of the Grills as promised and the value of the Grills as delivered. Additionally, Plaintiffs and Class members either have or will incur economic damages at the point of repair in the form of the cost of repair.

60.     Plaintiffs and Class members are entitled to legal and equitable relief against Defendants, in the form of damages, specific performance, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT III

### *Violation of Florida's Deceptive and Unfair Trade Practices Act*
### (§ 501.201 *et seq.*, Fla. Stat. Ann.)

61.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1 – 27, 28(ii), and 29 – 34.

62.     Plaintiffs and the Florida SubClass members are persons entitled to relief under Florida's Deceptive and Unfair Trade Practices Act, § 501.201, *et seq.*, Fla. Stat. Ann. ("FDUPTA").

63.     Defendants' sold Plaintiffs and Florida SubClass members Grills that were defective under Florida law.

64.     The conduct of the Defendants, as set forth above, constitutes an unfair or deceptive act or practice under FDUTPA.  Defendants' conduct has been illegal, immoral,

unethical, oppressive, or unconscionable, deceptive and attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce. Defendants' conduct was prohibited by section 501.202 and, accordingly, was unfair. Plaintiffs and the Florida Subclass hereby bring a private action pursuant to FDUTPA.

65.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and Florida SubClass members have suffered and will continue to suffer injury, harm and economic loss as described above.

66.     Defendants' violations of FDUPTA, and other states nationwide were knowing or willful as Defendants were notified of the defects and continued to sell its Grills.

67.     Plaintiffs and Class members are entitled to a disgorgement of all monies paid for the Grills by Plaintiffs and Class members.

## COUNT IV

### *Negligent Misrepresentation*

68.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1-45.

69.     Throughout the Class Period, Defendants misrepresented to Plaintiffs and the Class that the Grills were reliable, among other claims. Defendants delivered this message in a number of advertising mediums in an effort to establish the Char-Broil brand as a desirable product with consumers.

70.     The reliability claims, among others, made by Defendants concerning their Grills were false and misleading because they misrepresented the nature or qualities of the Grills, and at the time Defendants made and publicized such factual claims, Defendants had no reasonable grounds for believing that the representations were true.

71.     The Defendants' reliability claims were likely to deceive Plaintiffs and the Class and, in fact, have actually deceived Plaintiffs and the Class.

72.     Plaintiffs and the Class acted in reasonable reliance upon the truth of the claims made by Defendant regarding the Grills and became owners thereof.  As a direct and proximate result of Plaintiffs' and the Class' reliance upon the claims of Defendants, Plaintiffs and the Class have sustained damages in the form of purchasing Grills they never would have purchased and are entitled to rescission.

## COUNT V

### *Unjust Enrichment*

73.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1 – 45.

74.     Plaintiffs and the Class members conferred a benefit upon Defendants, in the form of the price they paid for the Grills and the price they paid directly to the Defendants to replace defective parts they would not have otherwise purchased except for Defendants' misleading representations.

75.     Defendants accepted and retained such benefits under circumstances which make such acceptance or retention inequitable.  Defendants were not entitled in law or in equity to receive such benefits.

76.     By accepting and retaining such benefits, Defendants have been unjustly enriched, to the detriment of Plaintiffs and Class members.

77.     As a result, Defendants must make restitution to Plaintiffs and Class members for the full value of the benefits conferred.

## COUNT VI

### *Magnuson-Moss Warranty Act*

### (15 U.S.C. §§ 2301, *et seq.*) - Express and Implied Warranties

78.     Plaintiffs incorporate by reference and reallege the allegations of paragraphs 1 – 45.

79.     The subject Grills are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

80.     Plaintiffs and Class members are "consumers" within the meaning of  the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).   They are consumers because they  are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

81.     Defendants are each a "supplier" and "warrantor" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

82.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who  is damaged by the failure of a warrantor to comply with a written or implied warranty.

83.     Defendants' express warranties are written warranties within the meaning of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). Each of the Defendants breached its express warranties by selling the Grills that were defective in design, material, and workmanship, and that are likely to fail prematurely; and by refusing to properly repair or replace the defective Grills or defective parts free of any charge or expense.

84.     Defendants provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase of their Grills that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(7).   As a part of the implied warranty of merchantability, Defendants warranted that the subject Grills were properly designed, manufactured, and marketed, and were adequately labeled.

85.     Defendants breached these express and implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

86.     Any efforts to limit the express or implied warranties in a manner that would exclude coverage for the Grills and their defects is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the defective Grills is null and void.

87.     Plaintiffs and the other Class members have had sufficient direct dealings with either Defendants or their agents to establish privity of contract.

88.     Nonetheless, privity is not required here because Plaintiffs and other Class members are intended third-party beneficiaries of contracts between Defendants and its

retailers, and specifically, of the implied warranties and because Plaintiffs and Class members bought replacement parts directly from the Defendants.   In addition, the retailers were not intended to be the ultimate consumers of the subject Grills and have no rights under the warranty agreements provided with the Grills; the warranty agreements were designed for and intended to benefit consumers.

89.   Requiring an informal dispute settlement procedure, or affording Defendants a reasonable opportunity to cure their breach of written warranties, would be unnecessary and futile.  At the time of sale of each Grill, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the inability of the Grills to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective manufacture of the Grills.   Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement, whether under the Magnuson-Moss Warranty Act, that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

90.   In addition, pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and would not be required to give the Defendants notice and an opportunity to cure until at the earliest, such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

91.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of their Grills, in an amount to be proven at trial.   In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

92.     Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2301(d)(l).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class pray for judgment against Defendants, and each of them, and for the following relief:

A.     Certifying the Class as requested herein;

B.     Ordering Defendants to pay Plaintiffs' and Class members' actual damages;

C.     Ordering restitution and disgorgement of Defendants' revenues or profits to Plaintiffs and the proposed Class members;

D.    Ordering Defendants to provide notice to the Class of the purchasers of the Grills;

E.    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful and deceptive advertising practices as set forth herein, directing Defendants to retrieve existing false and misleading advertising and promotional materials, directing Defendants to engage in a corrective advertising campaign, directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution, and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

F.    Awarding attorneys' fees and costs to Plaintiffs and the Class; and

G.    Awarding such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demands a trial by jury on all issues so triable as a matter of right.

Dated:  March 21, 2015

Respectfully submitted,

*/s/ Kenneth G. Gilman*_____
Kenneth G. Gilman
Florida Bar No. 340758
GILMAN LAW LLP
8951 Bonita Beach Road, S.E. Suite 525
Bonita Springs, FL 34135
Telephone: (781) 307-2526
kgilman@gilmanlawllp.com

*Attorneys for Plaintiffs and Proposed Class*